(Hamilton County Common Pleas Court.)
September Term, 1897.

## STATE OF OHIO ex rel. M. F. FITZPATRICK, v. H. P. BOYDEN, AUDITOR OF CINCINNATI.

*Power of Board of Administration of Cincinnati to appoint watchman—*

JELKE, J.

At the conclusion of the testimony it became manifest, and counsel for the relators, counsel for the respondent and the court were unanimous in the conclusion that out of the six employes of the bridge department of the city, whose pay was the matter of controversy in his action, the employment of five of them was regular and proper, within the powers of the board of administration and according to law, and that these five, viz: Lewis, Bland, McCabe, Armstrong and Ross were clearly entitled to their money.

In the case of Ross, however, it was disclosed that his services were continuously equally divided between the bridge department and this sewerage department of the city, and that it was the custom of the board to charge his wages alternately one month to the bridge fund and the next month to the sewer fund. This method of payment to Ross, although the result to the city is identical, does not exactly conform to the facts of his employment, and then it was agreed in open court that the pay roll would be corrected in this particular, and hereafter in making up each pay roll, one-half of Ross' pay will be charged to the bridge fund and one-half to the sewer fund.

The only matter left in controversy and for the court to decide is the pay of Jerry O'Connor.

It appears from the testimony that O'Connor is the night watchman at the Liberty street viaduct; that his duties are primarily those of a watchman, to guard and preserve the property from depredation and fire, protect the lamps, and incidentally, so far as possible at night, those of a bridge tender, to make small repairs in the foot-walk and to remove and prevent dirt and nuisance.

It is admitted by counsel for the auditor that the services performed by O'Connor are necessary; that he was employed by the board of administration in good faith; that he has performed these services in good faith; that the city has had the benefit of such services, and that O'Connor ought to be paid by somebody.

It is contended, however, that the board of administrations has no power to employ anybody whose duties are primarily those of watchman; that the care and preservation of life and property is the duty of the police department, and that if O'Connor's services at the Liberty street viaduct are necessary, he should be employed by the police department and paid out of the police fund.

It is contended by counsel for the relators, that where a specific piece of property is committed to the custody of a city board for its care, supervision and control, and by reason of its size, location and nature, needs more watching than is afforded by the general police patrol, and there is a fund appropriated, subject to the order of said board, applicable to the payment of a watchman, said board may, in its discretion, employ such watchman to take special charge and to guard and preserve such specific piece of property.

The board of administration sent in an estimate, under Rev. Stats., 2690i, "for the maintenance and betterment of bridges," and an appropriation was duly made according to law.

That the duty of caring for and repairing the Liberty street viaduct, is on the city, has been determined by this court, Sayler, J., delivering the opinion, in the case of the State of Ohio ex rel. Bader v. The City of Cincinnati; and that this duty devolves upon the board of administration is fixed by Rev. Stats. 2187, 2207 and 2230, and is admitted in this case by conceding the propriety of the employment by said board of the other bridge laborers mentioned above.

These provisions then fix the powers and duties of the board of administration in relation to this viaduct.

The powers of this board as prescribed by these statutory provisions are to be strictly construed. They are only such powers as are expressly conferred and such as may ar se by fair implication because essential to carry out the express powers.

Counsel for relators contend that in the absence of other govermental provision for the service performed by O'Connor in the case at bar, the power to remove dirt and nuisance and to repair includes the power to prevent a recurrence of the nuisance or of the damage making repair necessary, citing Bliss et al. v. Krauss, (opinion per White, J.,) 16 Ohio St., pp. 62-63.

Counsel for respondent have not expressly admitted this proposition, but have taken their stand on the ground that there is other governmental provision for the service performed by O'Connor.

Counsel for respondent contend that the city of Cincinnati, in the exercise of its corporate functions and powers, is controlled by a scheme of municipal govermnent contained in a certain group of statutory provisions, commonly known as "the new charter;" that this scheme has divided the city government into certain departments and conferred its corporate powers on certain boards; and that no power can arise by implication to one board which has been expressly conferred by the charter upon another board.

This latter proposition is counsel's major premise. I am of opinion that it is sound.

The minor premises is, that the corporate powers and duties as to the care and preservation of life and property are conferred upon the police board.

The conclusion, then, is, that these powers having been expressly conferred upon the police board, no powers of this kind can arise by implication to the board of administration.

At first I was profoundly impressed by this argument, and felt that it was conclusive of the case at bar, but examination discloses that the minor premise is false.

The police department is no part of the city government whatever, and the charter which creates the board of administration confers no powers on the police board and confers no police powers on any board.

It was held by the circuit court of this county in the case of Yaple v. Morgan et al., 2 C. C., p. 406, (opinion per Cox, J.,) subsequently affirmed by the supreme court without report:

1. The board of police commissioners of the city of Cincinnati, appointed by the Governor of Ohio, under the "Act to establish an efficient and non-partisan police in cities of the first grade of the first class, passed March 30, 1886," are not officers of the municipal corporation, but a body appointed by the Governor, by the authority of the legislature, as an arm of the state for police purposes, and as such have a delegated quasi sovereignty, independent of control by the city, except as limited by the act creating the board.

2. Neither the city solicitor of Cincinnati nor the solicitor of Hamilton county, is designated as their attorney.

3. The fund set apart for the maintenance of the police force is not a city fund, but is the police fund of the state for the territory of Cincinnati.

It is plain from this that this argument against implied powers must fail. But it is ingeniously urged, if this argument fails, nevertheless the city has the right to determine the number of policemen it will have and the amount it will appropriate for the police fund, and by so doing it determines the amount of police protection which will be publicly provided in the city of Cincinnati.

The police department only undertakes to provide a general system of patrol with special detail as occasion demands. The city, in its proprietary interests, occupies the same relation to the police department as any private property owner, and has the same rights and is entitled to the same protection, no more and no less.

The police department has no more right to supply a private watchman to take charge of a special piece of the city's property year in and year out, than it has of the property of any private owner. True, if it has the means it would have the right, but then any tax payer could expect the same special service for any piece of property of his similarly exposed.

This being so, the police department has never undertaken to supply this special watch service regularly, year in and year out, to an specific property either belonging to the city or to a private owner, but

has left this to be provided where necessary to private property by its owner, and in the case of public property to that board upon which the law has placed the responsibilities of ownership.

This service, in fact then, not being otherwise provided,, there is nothing to prevent the fair implication of the power of the board of administration to provide it, in a proper case over a piece of property for the care of which said board is responsible. This conclusion is confirmed by reference to Rev. Stats., 1887, where the legislature expressly recognizes the employment of special policemen or private watchmen by departments other than the police board and expressly forbids their payment out of the police fund.

Rev. Stats., 1887: "The mayor, with the consent of the board of commissioners, is hereby authorized to appoint persons of suitable character, who may be in the employment of the city in other branches or departments, special patrolmen or policemen, but such special policemen shall not be paid for their services as policemen, either from the police fund of the city or the county treasury, and such policemen shall possess the same power as the regular patrolmen, and shall obey the rules and regulations governing the police force, and conform to its general discipline."

I have examined this argument, with the above result, because it has been stoutly maintained and resisted by counsel; but I am not satisfied with it, because it inherently contains a proposition which I do not admit, and which I am of opinion is not necessary to relator's case, and is not true, to wit: That the appointment of watchman O'Connor was an exercise of police power.

Police powers can not be acquired except by express grant.

I am convinced that the board of administration does not possess any police power in the sense denied by the circuit court, supra; its power to employ a watchman springs from the responsibility of guardianship.

O'Connor gets his employment as watchman from the board of administration; he may or may not acquire police authority under Rev. Stats., 1887, from the mayor, as is deemed expedient.

Another question is suggested which is important here, as its answer defines and limits whatever powers may arise by implication to the board of administration over a structure of this kind, and that is, whether the Liberty street viaduct is a separate specific piece of property in the same sense as is the water works or city stables, and as such entitled to a special watchman.

I am of opinion that in perfect condition, in good repair and open to general public use it is not; that it is no more than a street.

The supreme court has held in Railroad Co. v. City of Defiance, 52 Ohio St., p. 262, that a bridge is but a part and an extension of a street, and this construction has been followed in a number of condem-

[COPYRIGHT, 1897, BY CARL G. JAHN.].

nation and assessment cases in this county.

I am of the opinion that the board of administration would have no more power to maintain a watchman on this viaduct, under those conditions, than it would on a block on Fourth street which was open to general public use and travel.

As I have said, the powers granted to the board of administration must be strictly construed and its implied powers can only be those which spring naturally from its administrative functions.

Sec. 2187, provides: "The board shall supervise the cleaning, repairing and improving streets, * * * bridges, * * * etc."

It is because the Liberty street viaduct is in disrepair—its main road-way being dangerous and unfit for travel, and the whole structure being of doubtful strength, so that travellers and vehicles would be exposed to injury and the city to consequent liability in damages, and is therefore blocked—that it is for the time being taken up out of general use and passes into the special care and custody of the board of administration pending and until such repairs are made.

It being admitted that the services performed by O'Connor at the Liberty street viaduct are necessary and proper, and having found that the care and custody of said property is the duty of the board of administration, and said board having a fund out of which such service can be paid for, and I having found that said board, in a proper case, has power to employ such service, I am of opinion that if the board of administration did not provide somebody to perform the service done by O'Connor it would be a dereliction of duty on the part of said board.

I am of opinion, therefore, that O'Connor's pay furnishes no legal cause why the voucher in this case should not be approved.

The voucher will be corrected as to Ross as above indicated, and such order may be had as will carry out these conclusions.

Wm. M. Ampt, for the relator.—

Corporation Counsel. contra.